27759. SOUTHERN RAILWAY COMPANY *et al. v.* DeFOOR.

126

DECIDED NOVEMBER 25, 1939.

*Neely, Marshall & Greene, W. Neal Baird, Edgar A. Neely Jr.,* for plaintiff in error.

*Hewlett & Dennis,* contra.

STEPHENS, P. J.   Mrs. Birda DeFoor sued Southern Railway Company and Can B. Cannon, to recover damages for the homicide of her husband, Hewlett E. DeFoor, by the operation of an engine of the railway company.   It was alleged that Mr. DeFoor, hereinafter called the deceased, was a crew-caller for the Central of Georgia Railway Company, whose work required him to go to and from the main building of the Atlanta Terminal Company to various trains of his employer located on tracks adjacent to said building; that the defendant railway used a track in the terminal station which is known as "No. 1," and which runs immediately adjacent to the western side of the main terminal building; that in order to provide facilities for the deceased and others working in and about the ground floor of the terminal station, a crossing was provided at the southern end of the car shed which extended over all the tracks passing by the station; that the crossing was customarily used by a large number of people at all hours of the day and night in going across the various tracks, and especially across track "No. 1" which was nearest to the main building; that the defendants knew of this use of the crossing; that on September 28, 1936, at approximately 9:50 p. m., the deceased was walking over the crossing toward the main building, and on arriving at the first track aforesaid he was run into by an engine which was going southwardly, and received injuries which caused his death; that the engineer, Can B. Cannon, was not keeping a strict lookout ahead at the time; that the engine was being run at the rapid and reckless speed of twenty-five miles per hour in violation of a municipal ordinance; that the defendants failed to give any

warning of the approach of the engine by bell, whistle, or otherwise; that the defendants should have anticipated the presence of the deceased upon the crossing, and a warning signal should have been given upon approaching the crossing; that because of the character and the use of the crossing, ordinary care would demand that no train be run over it at a greater speed than ten miles per hour; that the deceased neither saw nor heard the approaching train; that there was a valid ordinance of the City of Atlanta that any person in charge of an engine or train who should run it through any part of the city at a greater speed than twenty miles per hour, was subject to fine and imprisonment by the recorder's court; that the deceased was a strong and able-bodied man, sixty-three years old, earning $110 per month, besides doing work about his home of the value of $15 per month; that suit was brought for the full financial value of his life; that the negligence of the defendants hereinafter set forth was joint and concurrent, and proximately caused the death of the deceased; that the defendants were negligent in driving the engine over the crossing at a speed in violation of a city ordinance, in driving the engine over a crossing at the rapid and reckless speed aforesaid, having in view the character of the locality and the use thereof, in failing through its engineer to keep a strict lookout ahead, which was a violation of a State law, in failing to toll the bell of the engine, in failing to give any warning signal of the approach of the engine to the crossing, and in failing to anticipate the presence of the deceased upon the crossing, and to so control the movement of the engine as to avoid injuring him.

The defendants filed separate answers in identical terms in which they admitted the existence and use of the crossing substantially as alleged by the plaintiff and that such use was known to them, but denied that the deceased was on the crossing at the time he was struck, and denied all allegations of negligence contained in the petition. For further answer the defendants alleged that the sole cause of the plaintiff's injuries and damages, if any she sustained, was the negligence of her deceased husband, and that the negligence of the deceased contributed proximately to his injuries and death.

An eyewitness testified for the plaintiff as follows: "As I stepped back I was looking nearly due north up the line of tracks. I saw a Southern Railroad engine coming on the track that was just

on the other side of me, the other side of this platform, or one of the tracks on the other side. It was going south. . . The Southern was coming this way, and my train was over here fixing to use the track on the opposite side. There was about eight or ten feet between the two tracks, the one the Southern was using and the track we were fixing to use. I know of a roadway or crossway that passes over the tracks that this Southern Railroad engine was coming on. . . That is a walkway that is used by people going and coming from the trains and back to the terminal station. As I stood there I saw something happen on that walkway at the north end of the shed. I believe it was engine No. 1705, a Southern Railroad engine. As I looked up I saw Mr. DeFoor—I took it he was going east. It looked like he hesitated, and the engine was coming and struck him. I don't know whether he possibly tried to get by it or tried to turn around. I thought he was going east. He was on the walkway. The part of the engine that hit him was right on the head block, the front end. As to whether or not it knocked him off the crossing, I turned my head when it hit him. The engine went on up above me. I imagine it went seventy or eighty feet above me, toward East Point going south. . . I think the man on the back of the Southern Railway engine put the air brakes on. I heard it when he put them on. . . The engine passed right by me—not over eight feet from me, I guess, if that far. In going over that crossing and in coming down toward me my estimate of the speed of that engine is twenty to twenty-five miles. I did not notice the bell of that engine ringing when it was coming along toward me nor when it passed me. My hearing was good. I am pretty positive that that was a cloudy night and kind of foggy. When the weather is cloudy and foggy naturally it will be foggy underneath the terminal station, but they have lights there. It would not be like it was out from under there. I had passed over that walkway myself just before that. I was walking in front of our train, which was a car length or so behind me. I did not see any one on that crossing immediately in front of me going in either direction at the time my train went down. I was flagging my train over that crossing. I did not see any one walking in front of the Southern engine flagging it. I don't think there was any one on the front of the engine as it went over the crossing. I saw a man on the back end of it. The headlight of

the Southern engine was burning. That was a light engine. The track that I was on was east of the one the Southern was coming on. In going through the terminal station, in approaching the terminal and approaching that crossing on that particular track that the Southern was on, the wheels and the operation of the engine make some noise independent of the bell. . . My train was standing when Mr. DeFoor was killed. I just caught a glimpse at about the time he was hit. He could have come from the east, but I am pretty sure he was coming the other way. I did not see him coming from the west. My first view of him was about the time he was struck. I would not be positive which way he came from, but it is just my opinion. I just saw him as he was hit, and I could not swear that he came from the west going toward the east. I would not swear which way he came from but I saw him hit just about the west side of the beam on the front of the engine. He had his back to me. He was struck on the engineer's side. He was struck by the head block. That's the front end of the engine. The head block runs all the way across. I mean the pilot beam. This particular engine was a switch engine and had a foot board. He was nearer the engineer's side when I saw him than he was to the fireman's side and that was my first view of him. . . I was not particularly interested in the speed that the Southern engine was making. They come out of there nearly every day just as fast as he was running. When I first saw Mr. DeFoor it seems that he was facing east, and turned just as I saw him. When he turned, he faced the engine. He turned to his left. Just at the time he turned it hit him just like that. . . I stated that I did not notice the bell ringing. I would not swear that it was not ringing. There was no obstruction, if Mr. DeFoor was on the walkway, to keep him from seeing the headlight of the engine. He could have seen it the same as I could if he had been looking that way."

The jury found a verdict for the plaintiff in the sum of $6500. The defendants filed a joint motion for new trial on the general grounds, and on twelve special grounds. This motion was overruled, and the defendants filed a joint bill of exceptions in which they excepted to the judgment of the court overruling the motion for new trial.

The plaintiff's case was predicated on the joint and con-

current negligence of the railway company and its engineer, Cannon, who was operating the switch engine. The court charged the jury: "In considering this case you can consider only the negligence of Can B. Cannon as charged in the petition, and no legal verdict could be rendered against the defendant railroad company unless you believe that Cannon was guilty of some one or more of the acts of negligence charged in the petition. You would not be authorized to go outside these allegations and inquire if the railroad company was negligent by or through any of its agents or servants than the defendant Can B. Cannon." In grounds 1, 6, and 7 of the motion for new trial it is complained that the court in instructing the jury as to the duty of keeping a lookout at the crossing and as to anticipating the presence of persons there etc., referred to duties resting on "employees" or "agents" thus not restricting the jury to a consideration of the acts of the engineer. The inaccuracy in using the plural number in defining the general duties of the railway company, when considered in connection with the charge above quoted, was not error.

Grounds 2, 3, 4, and 5 are without merit and do not require discussion.

▪ In grounds 8 and 9 it is complained that the court charged the jury erroneously on the duty of the plaintiff to avoid the consequences of the defendants' negligence, and afterwards recharged them on that point, but without specifically identifying that portion of the previous charge for which the recharge was substituted. In giving the recharge the court stated: "I want to withdraw the remarks or instructions which I gave you immediately after I told you about the form of the verdict and where I instructed you to write it on the yellow paper where I put 'XX' and substitute this in lieu of that:" · Then the court gave the correct charge on the point, stating, "Just substitute that for what I gave you." Afterwards, the jury coming in for further instructions, the foreman asked the court to repeat "that last charge that you gave us after we left here and returned." The court again gave the correct charge, and the foreman said that answered their inquiry. Under these circumstances giving the correct charge twice was sufficient to remove any harm from the erroneous instruction previously given.

▪ Another complaint in ground 9 is that the court, in answer

to the request from the jury to explain what constitutes negligence, defined negligence as the absence of or failure to exercise the degree of care required by law to be exercised, and then continued with the statement that the law required the defendants to exercise ordinary care so far as the particulars charged were concerned, without saying anything about the duty of the plaintiff to exercise ordinary care. It might have been better for the court in this connection to tell the jury that the plaintiff likewise was bound to use ordinary care, but since this principle was correctly charged elsewhere the objection raised is not sufficient ground for new trial.

■ Another complaint in ground 9 relates to the question of the speed of the train. The petition having alleged both that the speed of the train was in excess of a municipal ordinance limiting the speed to twenty miles an hour, and that the character and use of the crossing were such that ordinary care would require that no train be run over the crossing at a greater speed than ten miles per hour, it was not error for the court to charge the jury that the ordinance did not mean that a speed of twenty miles per hour would under all circumstances be permissible.

■ In grounds 10, 11, and 12 it appears that the court permitted the switchman, a witness for the defendants, to testify on cross-examination, over the objections of the defendants as follows: "If I had been on the front footboard of the engine I could have signalled for the engineer to stop," and, "Running at ten miles per hour I could stop our engine in four feet." The witness testified that there was an angle-cock which could be operated by a man standing on the front running board, and that by turning this angle-cock the emergency brake would be applied to the engine. The defendants objected to and moved to rule out the testimony above quoted. One ground of objection was that the petition did not allege that the defendants were negligent in not having a man on the front footboard. This objection is well taken. There was no allegation in the petition which would render this evidence admissible. The discussion by counsel and the action and the decision of the court were all calculated to impress on the jury that they could consider the failure of the defendants to have a man on the front running board as negligence. This impression could hardly have been removed by an instruction of the court later in the trial that the plaintiff could recover only upon some one or

132

more of the acts of negligence specified in the petition, and could not recover upon any ground of negligence, even if it existed, that was not specified in the petition. It was error to admit this testimony over the defendants' objections and motion to strike. This error demands the grant of a new trial.

Judgment reversed. Sutton and Felton, JJ., concur.